IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FOR OUR RIGHTS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID Y. IGE, et al.,<br><br>Defendants. | CIVIL NO. 21-00488 JAO-KJM<br><br>ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO CORRECT AMENDED COMPLAINT |

**ORDER AFFIRMING THE MAGISTRATE JUDGE'S
ORDER DENYING PLAINTIFF'S MOTION
FOR LEAVE TO CORRECT AMENDED COMPLAINT**

Plaintiffs For Our Rights, Greg Bentley, Steven Forman, John Heideman, Levana Lomma, and Geralyn Schulkind (collectively, "Plaintiffs")[1] appeal Magistrate Judge Kenneth J. Mansfield's Order Denying Plaintiff's Motion for Leave to Correct Amended Complaint ("Order"). ECF No. 68. For the following reasons, the Court AFFIRMS the Order.

**I.    BACKGROUND**

---

[1] Curiously, Plaintiffs assert at the end of their appeal that, "[c]onsidering the posture of this case, all Plaintiffs except Heideman and Lomma are no longer parties to this case." ECF No. 68 at 9. But, as Plaintiffs have not filed anything else to remove Bentley, Forman, Lomma, and Schulkind from this case, the Court will consider all the plaintiffs named in the proposed amended complaint as participating in the appeal. *See* ECF No. 54 at 21–22 (identifying plaintiffs).

The parties are by now well-familiar with the background facts and procedural history of this case; the Court includes here only the details necessary for resolution of the appeal.

Plaintiffs filed what they referred to as an "Amended Complaint" (but which the Court will refer to as a First Amended Complaint ("FAC")) on October 7, 2022, against Governor David Ige in his official and personal capacities. ECF No. 40. Governor Ige moved to dismiss the FAC, and that motion remains pending. ECF No. 41. Plaintiffs then filed an Ex Parte Motion for Leave to Correct Amended Complaint, ECF No. 43, which Judge Mansfield denied for failure to comply with Local Rule 7.10. ECF No. 44. Thereafter, Plaintiffs filed an Amended Motion to Amend/Correct Complaint, ECF No. 47, and again Judge Mansfield denied it for failure to comply with the Local Rules, ECF No. 49.

Finally, on December 5, 2022, Plaintiffs filed their latest Amended Motion for Leave to Correct Amended Complaint ("Motion"). ECF No. 54. The proposed amended complaint alleges a procedural due process claim and a Fourth Amendment seizure claim against Governor Ige in his personal capacity, and against Mayor of Kauai Derek S.K. Kawakami in his official and personal capacities. ECF No. 54 at 7, 77, 83. Governor Ige filed a Memorandum in Opposition, ECF No. 57, and Mayor Kawakami took no position on the Motion, explaining that Plaintiffs' counsel acknowledged that he should not have been

included in the proposed amended complaint.  *See* ECF No. 58.  A hearing was held on January 20, 2023, at which Plaintiffs' counsel did not appear.  ECF No. 62, 65 at 1–2.  Judge Mansfield thereafter issued an Order Denying Plaintiff's Motion for Leave to Correct Amended Complaint ("Order").  ECF No. 65

In the Order, Judge Mansfield reasoned that Plaintiffs' proposed amendments were futile because they failed to state a claim for which relief could be granted under the Fourteenth and Fourth Amendments.  *Id*. at 6–10.  More specifically, he determined that the emergency proclamations at the center of the procedural due process claim "did not give rise to the constitutional requirements of individual hearing and notice" because such orders affected all individuals in the state and were "a part of the unprecedented emergency that was the COVID-19 pandemic."  *Id*. at 8.  As for the Fourth Amendment unreasonable seizure claim, Judge Mansfield explained that because Governor Ige did not issue the emergency proclamations in either an investigatory or administrative capacity, but rather for an independent purpose, the proclamations could not constitute seizures under the Fourth Amendment.  *Id*. at 9.

On February 10, 2023, Plaintiffs filed the instant appeal.  ECF No. 68.  The Court opts to decide this matter without a hearing pursuant to Local Rule 7.1(d).

## II. LEGAL STANDARD

3

Parties may object to a magistrate judge's nondispositive pretrial orders, such as orders denying leave to amend complaints. *See* Fed. R. Civ. P. 72(a); Local Rule 74.1; *Seto v. Theilen*, 519 Fed. Appx. 966, 969 (9th Cir. 2013) (characterizing a motion for leave to amend a complaint as nondispositive). In such instances, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is *clearly erroneous or is contrary to law*." Fed. R. Civ. P. 72(a) (emphasis added); *see Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1041 n.4 (9th Cir. 2010).

The "clearly erroneous standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed' before reversal is warranted." *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004) (some internal quotation marks and citation omitted). "The reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991) (citation omitted); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (stating that a district court may not overturn a magistrate judge's pretrial order "simply because [it] might have weighed differently the various interests and equities").

### III. DISCUSSION

Plaintiffs assert that Governor Ige violated their due process rights when he issued and enforced quarantines pursuant to the emergency proclamations. Plaintiffs contend that Governor Ige failed to:

> (i) make an individualized assessment about the Plaintiffs' risk to the public health; (ii) provide timely notice of such quarantines; (iii) provide timely notice to Plaintiffs of their right to challenge such orders for quarantine; and (iv) initiate a hearing within a reasonable time for judicial review of Plaintiffs' quarantine orders where they could be represented by counsel, could present opposing evidence and argument, and could cross examine witnesses.

ECF No. 54 at 79.

Judge Mansfield concluded that Plaintiffs failed to establish a procedural due process claim. He explained that in *Carmichael v. Ige*, 470 F. Supp. 3d 1133 (D. Haw. Jul. 2, 2020), the district court had already determined that Governor Ige's emergency proclamations did not give rise to a procedural due process claim because the COVID-19 pandemic was an "unprecedented emergency" that was "precisely the type of emergency situation" requiring Governor Ige "to act expeditiously." ECF No. 65 at 7–8 (quoting *Carmichael*, 470 F. Supp. 3d at 1148).

Judge Mansfield further explained that in *Kelley O'Neil's Inc. v. Ige*, CIV. NO. 20-00449 LEK-RT, 2021 WL767851 (D. Haw. Feb. 26, 2021), the district court concluded that: (1) the United States Supreme Court had already recognized that "summary administrative action may be justified in emergency situations;" and (2) the Ninth Circuit had decided that "governmental decisions which affect

large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." ECF No. 65 at 7 (citing *Kelley O'Neils*, Inc., 2021 WL 767851, at *6 (citing *Hodel v. Vir. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981); *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994)).

Judge Mansfield found that the quarantine orders "affected all of Hawaiʻi and were a part of the unprecedented emergency that was the COVID-19 pandemic." *Id.* at 8. He thus concluded that under *Carmichael* and *Kelley O'Neils Inc.*, the emergency proclamations "did not give rise to the constitutional requirements of individual hearing and notice." *Id.*

### A.     Plaintiffs' Procedural Due Process Arguments

Plaintiffs commence their procedural due process argument by stating, "[t]he Magistrate [Judge] erred in concluding that the Governor, when implementing his various proclamations and enforcing them against the Plaintiffs, did not violate the Plaintiffs' right to procedural due process, and was acting in a legislative rather than an executive capacity." ECF 68 at 7 (citing ECF No. 65 at 6–8). In support, Plaintiffs point to a Supreme Court case involving involuntary civil commitment to mental hospitals. *Id.* at 7 (discussing *Addington v. Texas*, 441 U.S. 481 (1979)). Bringing it back to this case, Plaintiffs contend, "[v]ia the procedural due process

case of the Supreme Court [case, *Addington*], constitutional due process was denied to plaintiffs." *Id.* at 8.

Nothing in Judge Mansfield's Order or *Addington* addresses a distinction between legislative capacity actions and actions in an executive capacity. In fact, this is the first time Plaintiffs raise how this distinction affects a procedural due process claim. The Court declines to consider Plaintiffs' newly raised argument.

A district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's order. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). Plaintiffs (1) did not make this legislative/executive capacity argument in their Motion, (2) opted against filing a reply to Defendants' Opposition, and (3) failed to appear at the hearing on the Motion before Judge Mansfield. Plaintiffs are also not proceeding pro se in this action; they are represented parties. *See Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002) (holding that the district court abused its discretion to refuse to consider an argument raised for the first time by petitioner because he was a pro se petitioner making "a relatively novel claim under a relatively new statute" and had "a third-grade education and was functionally illiterate"). The Court would therefore be well within its discretion to disregard this argument raised for the first time in the appeal.

In any case, *Addington* is irrelevant to any discussion regarding whether action in a legislative or executive capacity dictates entitlement to procedural due process. The question in *Addington* was "what standard of proof is required by the Fourteenth Amendment to the Constitution in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital." 441 U.S. 418, 419–20; *see also Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) ("We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." (citing *Addington*, 441 U.S. 418, 426–27) (other citations omitted)). Quixotically, Plaintiffs believe they are entitled to the same due process requirements as individuals who are being involuntarily committed to a mental hospital for an indefinite period. The Court disagrees.

Unlike *Addington*, which explained that the Supreme Court has consistently "recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," this Court has already concluded that, under *Halverson*, 42 F.3d at 1261, "because the Emergency Proclamations affect the entire State, they 'do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient.'" *Carmichael*, 470 F. Supp. 3d 1133 (quoting *Halverson*, 42 F.3d at 1261).

8

Plaintiffs also challenge this Court's reliance on *Halverson*, arguing that the plaintiffs in *Halverson* received all the process they were due because an environmental impact statement was prepared before the county defendants took the actions in dispute.  ECF No. 68 at 3.  Plaintiffs contend that in this case, unlike *Halverson*, "potential risks of vaccination were and still are unknown.  There was no open discussion in public domains where the public got to voice their opinion on vaccine mandates as a requirement of travel." *Id*.  The Court is confused by this argument raised for the first time by Plaintiffs.

As far as the Court can tell, this case is about quarantines, not vaccinations.  Indeed, the word does not appear once in the proposed amended complaint.  And each of the named Plaintiffs allege injuries that occurred *before* the widespread availability of vaccinations.  *Compare* ECF No. 54 at 57 (Plaintiff Bentley returns to Kauai on January 20, 2021); *id*. at 61 (Plaintiff Forman required to stay at home between March and June 2020); *id*. at 62 (Plaintiff Forman's relative dies in late March 2021 outside of Hawaiʻi and he claims he does not attend the funeral due to quarantine requirements); *id*. at 64 (Plaintiff Heideman travels from California to Hawaiʻi on May 20, 2021); *id*. at 68 (Plaintiff Lomma travels intrastate on March 22, 2021); *id*. at 74 (Plaintiff Schulkind travels to San Diego on January 6, 2021) *with* www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/overview-COVID-19-vaccines.html (last visited March 16, 2023) (explaining that the Pfizer-

BioNTech COVID-19 vaccine was approved by the Food and Drug Administration on August 23, 2021, while the Moderna vaccine was approved on January 31, 2022). The Court thus rejects Plaintiffs' attempt to distinguish *Halverson* from this case based on "unknown" potential risks of vaccination. *See* ECF No. 68 at 3.

Plaintiffs also appear to argue that *Hodel*, cited by the district court in *Kelley O'Neil's Inc.*, is distinguishable from this case because an actual emergency had not been proven when Governor Ige issued the proclamations. ECF No. 68 at 2 ("Plaintiffs contend that citizens are at a minimum entitled to procedural protections such that the government have checks and balances such that **an actual emergency** be proven."). Plaintiffs provide no support for their proposition that summary administrative actions may be justified in emergency situations only if an actual emergency is proven.

But even if such authority existed, there can be no doubt that around the time the emergency proclamations were ordered, COVID-19 was "a novel severe acute respiratory illness" that, by June of 2020, "ha[d] killed . . . more than 100,000 nationwide." *South Bay United Pentecostal Church v. Newsom*, --- U.S. ---, 140 S.Ct. 1613, 207 L.Ed.2d 154 (Roberts, C.J., concurring). As Judge Mansfield explained, procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." ECF No. 65 at 7

(quoting *Kelley O'Neil's Inc.*, 2021 WL 767851 at *6 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). But, the "United States Supreme Court has recognized that 'summary administrative action may be justified in emergency situations.'" *Id.* (quoting *Kelley O'Neil's Inc.*, 2021 WL 767851 at *6 (citing *Hodel v. Vir. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981)).

The immediate danger that the pandemic posed was "precisely the type of emergency situation requiring Defendant to act expeditiously." *Carmichael*, 470 F. Supp. 3d at 1149. Judge Mansfield's conclusion that the emergency proclamations did not give rise to the constitutional requirements of individual hearing and notice was thus not clearly erroneous or contrary to law.

**B.    Governor Ige's Immunity From Suit**

Plaintiffs also object to Judge Mansfield's alleged conclusion about Governor Ige's immunity from suit:

> The Magistrate [Judge] also concluded that the Governor, when he issued the proclamations at issue here, was acting in a legislative capacity rather than an executive one, making him immune from this suit (citing *Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir. 1994)). However, the Governor was, based on the facts of this case, operating as an executive and thus not immune.

ECF No. 68 at 8. The Court is unable to find any references to Governor Ige's immunity in Judge Mansfield's Order. Indeed, Plaintiffs fail to cite where in the Order this conclusion appears. They simply add that the portion of the Order discussing immunity cites to *Halverson* for this conclusion.

The Order cites *Halverson* only once and only because *Kelley O'Neil's Inc.* cited it for the conclusion that "governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." ECF No. 65 at 7 (quoting *Kelley O'Neil's Inc.*, 2021 WL767851, at *6 (citing *Halverson*, 42 F.3d at 1261)). *Halverson* provides a string cite in support of the foregoing holding. The last case in the string cite is cited in support of the holding by analogy, "*C.f. Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir. 1988)." *Halverson*, 42 F.3d at 1261. The following explanatory parenthetical is provided for *Bateson*: absolute immunity "attaches only to decisions that are legislative, those that apply to the general community." *Id*.

As far as the Court can tell, this is where Plaintiffs extract their argument that Governor Ige "was acting in a legislative capacity rather than an executive one, making him immune from this suit" because neither Judge Mansfield nor the Motion discusses why Governor Ige's capacity when he issued the proclamation is relevant. Nor does either discuss Governor Ige's immunity from suit.

The Court cannot determine that Judge Mansfield's supposed conclusion that Governor Ige is immune from suit is clearly erroneous or contrary to law because he never said it. Judge Mansfield had no opportunity to address Plaintiffs'

arguments regarding Governor Ige's immunity because Plaintiffs declined to respond to the Opposition and only raised this argument for the first time in their appeal. And they did so by distorting Judge Mansfield's conclusions to suit their arguments.

Plaintiffs make other incomprehensible arguments attempting to tie the civil commitment case in *Addington* to the issue of whether the proclamations were executive or legislative in nature. *See* ECF No. 68 at 8. And they throw in two cases from the early 1900s to explain that the "origins of this distinction between legislative and executive in determining whether an official like the Governor is entitled to immunity for constitutional violations is based on *Londoner v. Denver*, 210 U.S. 373, 385 (1908), and *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915)." *Id*. at 9. But they provide no further explanation about these cases or how they are relevant here.

Plaintiffs entire appeal employs what the Ninth Circuit has determined as the "spaghetti approach." *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). Plaintiffs have "heaved the entire contents of a pot against the wall in hopes that something would stick." *Id*. Indeed, the Court has had to sort through the "noodles" in search of Plaintiffs' procedural due process arguments in their appeal.

13

The Court thus declines to examine this argument any further than it already has. *See U-Haul Co. of Nev., Inc. v. Gregory J. Kamer, Ltd.*, No. 2:12-CV-00231-KJD, 2013 WL 4505800, at *2 (D. Nev. Aug. 21, 2013) ("[T]he burden of representation lies upon [the parties], and not upon the Court.")). The Court finds no error in Judge Mansfield's conclusion that Plaintiffs had failed to establish a procedural due process claim in their proposed amended complaint. ECF No. 68 at 6–8.

C.  **Unreasonable Seizure Under the Fourth Amendment**

Plaintiffs do not take issue in their appeal with any of the conclusions in the Order's "Unreasonable Seizure Under the Fourth Amendment" section. Nor does the Court find any of the conclusions in this section clearly erroneous or contrary to law. The Court thus AFFIRMS Judge Mansfield's conclusion that subjecting Plaintiffs to quarantine does not constitute a seizure within the scope of the Fourth Amendment.

## IV.  CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Order Denying Plaintiff's Motion for Leave to Correct Amended Complaint, leaving the FAC, ECF No. 40, as the operative complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, __March__ 28 , 2023.



Jill A. Otake
United States District Judge

CIVIL NO. 21-00488 JAO-KJM, *For Our Rights, et al. v. David Y. Ige, et al.*; Order Affirming the Magistrate Judge's Order Denying Plaintiff's Motion for Leave to Correct Amended Complaint